SCHECHET v. KESTEN.

1. PHYSICIANS AND SURGEONS—PRIVILEGED COMMUNICATIONS.
   The statute barring a physician from disclosing information he obtained from a patient in order to enable physician to prescribe accords a privilege which belongs to the patient, continues indefinitely, and is one which may be waived by no one but the patient, the statute having been passed for the sole purpose of enabling persons to secure medical aid without betrayal of confidence (CL 1948, § 617.62; PA 1961, No 236, § 2157).

2. DISCOVERY—INTERROGATORIES—PHYSICIAN-PATIENT PRIVILEGE.
   Requirement of circuit judge of defendant physician that he answer interrogatories, put to him by plaintiff in action for libel and slander in report to credentials and executive committee of hospital in which defendant was chairman of department of surgery, which interrogatories required answers privileged from disclosure was reversibly erroneous, as the statutory privilege is an absolute bar even to the disclosure of the names of the patients not involved in the action (CL 1948, § 617.62; PA 1961, No 236, § 2157).

Appeal from Genesee; Parker (Donn D.), J. Submitted November 8, 1963. (Calendar No. 71, Docket No. 50, 236.) Decided March 5, 1964.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 17 Am Jur, Discovery and Inspection § 16; 58 Am Jur, Witnesses § 401 *et seq.*

Case by Isadore A. Schechet against Heinrich H. Kesten for damages from libel and slander. Interrogatories ordered to be answered. Defendant appeals. Reversed and remanded for further proceedings.

*Howard J. Bueche,* for plaintiff.

*Joseph & Joseph* (*Joseph R. Joseph,* of counsel), for defendant.

BLACK, J. The statute which precludes that which the circuit court ordered answered upon discovery-interrogatory has remained unchanged—certainly in presently applicable substance—since *Storrs* v. *Scougale,* 48 Mich 387, was decided in 1882 (See CL 1871, § 5943; CL 1897, § 10181; CL 1915, § 12550; CL 1929, § 14216; CL 1948, § 617.62 [Stat Ann § 27.911]; RJA, PA 1961, No 236, § 2157 [CLS 1961, § 600.2157 (Stat Ann 1962 Rev § 27A.2157)]).

In the *Storrs Case,* an action to set aside as fraudulent certain conveyances of real and personal property executed by plaintiff James R. Storrs (otherwise known as Riley Storrs), the defense sought to discredit Riley's case as indicated by ensuing quotation. The reader will perceive at once that the physician's testimony, to which Justice COOLEY alluded, called forth the fact of consultation and treatment by the testifier of "a young German lady" who was not a party to the cause and whose privilege by law as well as the physician's Hippocratic oath was outrageously violated. Mr. Justice COOLEY, writing for the unanimous Court, dealt with the situation in words which justify complete and devotional repetition thereof in this year 1964. Having made reference to the purpose of defense counsel, the Justice proceeded (pp 395, 396):

"For this purpose a physician was called to the stand, who testified that he 'treated a young German lady at Benham's hotel in the city of Corunna in December, 1879, and January, 1880,' for a bad case of gonorrhœa, and that he was informed she had been at work for Riley Storrs. This evidence ought not to be passed over without remark. It is surprising evidence for many reasons. One of these is that the physician had no business to give it. The statute—CL 1871, § 5943—provides that 'No person duly authorized to practice physic and surgery shall be allowed to disclose any information which he may have acquired in attending any patient, in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon.' Every reputable physician must know of the existence of this statute; and he must know from its very terms as well as from the obvious reasons underlying it, that it is not at his option to disclose professional secrets. A rule is prescribed which he is not to be 'allowed' to violate; a privilege is guarded which does not belong to him but to his patient, and which continues indefinitely, and can be waived by no one but the patient himself. *Briggs* v. *Briggs,* 20 Mich 34; *Johnson* v. *Johnson,* 14 Wend (NY) 637; *Edington* v. *Mutual Life Ins. Co.,* 67 NY 185; *Grattan* v. *Metropolitan Life Ins. Co.,* 80 NY 281 (36 Am Rep 617); *Cahen* v. *Continental Life Ins. Co. of N. Y.,* 41 NY Super 296. What was done in this case may have been thoughtlessly done; but if a physician is found disposed to violate both the law of the land and the precepts of professional ethics by making such a disclosure, and if counsel invite him to do so by their questions, the [circuit court] commissioner in the case of so plain a disregard of the law to the prejudice of a third party, may well decline to be an instrument of the wrong; at least until he can take the opinion of the circuit judge on the subject. It is no doubt the duty of the commissioner in most cases to take all the testimony that is offered, and

leave questions of competency to be passed upon afterwards; but there may be cases so outrageous as to constitute exceptions; and the case of making use of the opportunity in order to assail the reputation of a third party without right and in distinct violation of a statute ought to be considered such a case. It may be that the woman indicated by this evidence was a worthless character, and entitled to no respect; but she has the same rights under the law with others, and she is not to be condemned on illegal evidence, or convicted of misconduct through a violation of law on the part of those who assume to administer it."[1]

The case before us was brought to recover damages resulting from an alleged slanderous and libelous report made by defendant, the then chairman of the department of surgery of Flint General Hospital, to the "credentials and executive committee" of the hospital. That report was, to say the least, critical of plaintiff's surgical competence. It concluded with recommendation that plaintiff "should be permanently suspended from the staff."

Plaintiff alleges that he is a "duly qualified osteopathic physician." Defendant, answering, alleges that he is "a duly licensed doctor and authorized to practice osteopathic medicine." The pleaded issues do not now concern us. A question of discovery by interrogatory does. See sections 4 through 6 of former (1945) Court Rule No 35[2] and present GCR 1963, 301, 302, and 307.

After the case had come to issue plaintiff submitted a series of interrogatories for answer by defendant, most of which demanded discovery of the sources of information defendant conveyed to the

---

[1] Note reliance upon the core of this quotation in *Thomas* v. *Township of Byron*, 168 Mich 593, at 598 (38 LRA NS 1186, Ann Cas 1913C, 686), and *Massachusetts Mutual Life Ins. Co.* v. *Trustees*, 178 Mich 193 at 199, 200 (51 LRA NS 22, Ann Cas 1915D, 146).

[2] See 334 Mich xl and 352 Mich xv.—Reporter.

committee by such report. Examples, all provocative of the presented question of privilege, are interrogatories D, E, F, G, and H of division 3. They read:

"D. What patient's case and fact situation was involved in each circumstance when such alleged statement was made by Dr. Schechet which induced said statement or contention of Dr. Schechet?

"E. Identify the case or cases that you believe Dr. Schechet should have consulted others and did not do so.

"F. State whom Dr. Schechet should have consulted in each of the above named instances.

"G. State whether or not each of the above named cases was properly or improperly managed by Dr. Schechet and if in fact improperly managed in your opinion, state what different procedure or care you believe should have been undertaken.

"H. State the manner of discovery by you of any instance where you believe Dr. Schechet improperly failed to consult others and identify all records upon which you base such opinion and state all information received by you from any other source which assisted you in making your conclusion, stating the name of the person so informing and the information related by such person to yourself."

The circuit judge upheld what defendant on appeal would overturn, saying:

"I have made up my mind to make a good issue for you in the Supreme Court on patient-doctor relationship, and the rest of it really shouldn't be any problem."

Leave to appeal was duly granted. Decision can and should be summary. It need only be said that no question of waiver of privilege is before us; that the patients whose names and treatments plaintiff would have disclosed are neither party nor privy to this action in any way; that their legal position is

quite analogous to that of the possibly upright "young German lady" whose privilege without her knowledge was trampled before the circuit court commissioner in the *Storrs Case;* that the third party information plaintiff would have disclosed could in no view of the cited rules of court be regarded as "matter not privileged which is admissible under the rules of evidence governing trials," and that the circuit court erred reversibly in failing to uphold the defendant physician's right—no duty—to refrain from disclosure as sought particularly by interrogatories D, E, and G above.

*To summarize:* The statute imposes an absolute bar. It protects, "within the veil of privilege," whatever in order to enable the physician to prescribe, "was disclosed to any of his senses, and which in any way was brought to his knowledge for that purpose." (*Briggs* v. *Briggs,* 20 Mich 34, 41.) Such veil of privilege is the patient's right.[3] It prohibits the physician from disclosing, in the course of any action wherein his patient or patients are not involved and do not consent, even the names of such noninvolved patients.

Reversed and remanded for entry of order in accordance with this opinion. Costs to defendant.

KAVANAGH, C. J., and DETHMERS, KELLY, SOURIS, SMITH, and O'HARA, JJ., concurred.

ADAMS J., took no part in the decision of this case.

---

[3] "The statute is one passed for the sole purpose of enabling persons to secure medical aid without betrayal of confidence." *Grand Rapids & Ind. R. Co.* v. *Martin,* 41 Mich 667, at 671 (12 Am Neg Cas 95).