PORTER v MICHIGAN OSTEOPATHIC HOSPITAL ASSOCIATION,
INC

Docket No. 98457. Submitted December 10, 1987, at Detroit. Decided
August 15, 1988. Leave to appeal applied for.

Iris Porter, a schizophrenic, was allegedly raped by two other
patients while a patient at a hospital operated by Michigan
Osteopathic Hospital Association, Inc. Delphine Porter, as
guardian of Iris Porter, brought an action in Wayne Circuit
Court against the hospital, claiming that the hospital owed to
Iris Porter a duty to protect her from assault by other patients
and had breached that duty. Similar claims were brought
against two unknown hospital employees. Plaintiff sought dis-
covery of the hospital's knowledge of any and all suspected
assailants, of the existence of prior incidents of assaultive
behavior occurring at the hospital and of the hospital's policies
and procedures for handling known criminals or assaultive
patients. The trial court, James E. Mies, J., ordered that the
hospital disclose, among other things, any and all information
contained in the hospital's records about any suspected assail-
ants pertaining to their prior criminal history, all information
pertaining to the investigation of the incident and all informa-
tion about any suspected participant in the incident to the
extent that the information was not obtained through the
course of privileged communication. The order further provided
that, if it was claimed that information was privileged, an in
camera hearing would be held prior to disclosure to determine
whether a privilege applied. The hospital appealed on leave
granted, arguing that it should not be ordered to divulge
privileged information at an in camera hearing and that all
information in hospital incident reports was unequivocally
privileged and not subject to discovery.

The Court of Appeals held:

REFERENCES

Am Jur 2d, Depositions and Discovery §§ 9, 10, 29-31, 262.

Physician's tort liability for unauthorized disclosure of confidential
information about patient. 48 ALR4th 668.

Physician-patient privilege as extending to patient's medical or
hospital records. 10 ALR4th 552.

Liability of hospital for injury caused through assault by a patient.
48 ALR3d 1288.

1. An in camera hearing is an appropriate method to determine whether information claimed to be privileged physician-patient and psychiatrist-patient information is, in fact, subject to one of the statutory privileges. Of necessity, the determination of whether a privilege applies would require that the nature of the information be disclosed in the in camera hearing.

2. Since the trial court has yet to address in the in camera proceedings the question of whether the requested information contained in the hospital's incident reports was privileged by the peer review privilege, review of that question by the Court of Appeals is premature.

Affirmed.

MacKenzie, J., dissented. She would hold that the statutory privilege clearly prohibits the release of any medical information relating to patients who are not parties and have not waived the privilege. She would set aside the trial court's discovery order.

1. Pretrial Procedure — Discovery — Privileged Information — Physicians — Psychiatrists.

The physician-patient and psychiatrist-patient privileges extend only to information which is gained by the physician or psychiatrist in a professional capacity and which is necessary for purposes of examination, diagnosis and treatment (MCL 330.1750[1][c], 600.2157; MSA 14.800[750][1][c], 27A.2157).

2. Pretrial Procedure — Discovery — Privileged Information — Hospitals — In Camera Hearing.

An in camera proceeding is an appropriate method by which to determine whether information contained in hospital records is protected by a statutory privilege.

*Julie H. Hurwitz, P.C.* (by *Julie H. Hurwitz* and *Thomas W. Stephens*), and *Richard M. Goodman,* of Counsel, for plaintiff.

*Kitch, Saurbier, Drutchas, Wagner & Kenny, P.C.* (by *Salwa G. Sprong*), for Michigan Osteopathic Hospital Association, Inc.

Before: KELLY, P.J., and MACKENZIE and P. D.
SCHAEFER,* JJ.

KELLY, P.J. This is an interlocutory appeal
brought by defendant hospital of the trial court's
order compelling discovery. We affirm.

Iris Porter, who had been diagnosed as schizo-
phrenic, was admitted as a patient to defendant
hospital on November 28, 1985. In the early morn-
ing hours of November 29, 1985, Porter was alleg-
edly raped by two other patients of the hospital.

Plaintiff, Iris Porter's guardian, brought this
action, claiming that defendant hospital had a
duty to Iris Porter, but had breached that duty,
due to either its negligence, gross negligence, or
reckless or wilful and wanton misconduct. Plaintiff
brought those same claims against John and Mary
Doe, unknown employees of defendant hospital.
Plaintiff also included a nuisance claim against
the hospital.

Subsequently, plaintiff sought information re-
garding defendant's knowledge of any and all sus-
pected assailants, the existence of prior incidents
of assaultive behavior occurring at the hospital,
and all policies and procedures employed by the
hospital regarding the handling of known crimi-
nals or assaultive patients. The trial court then
issued an order on January 30, 1987, that ordered
the hospital to disclose the following:

> A. The name and address of any and all sus-
> pected assailants;
> B. The room assignments of any and all sus-
> pected assailants while they were patients at De-
> fendant HOSPITAL;
> C. The dates of admission and discharge of any

* Circuit judge, sitting on the Court of Appeals by assignment.

and all suspected assailants, for the period of time including November 29-30, 1985;

D. Any and all records of prior history of assaultive behavior, intoxication and/or other misconduct of any and all suspected assailants except for *information obtained from said suspected assailants through the course of privileged communication;*

E. Any and all records, including but not limited to, nurses' notes of observations of assaultive behavior and/or other misconduct of any and all suspected assailants;

F. Any and all information contained in the records of any and all suspected assailants pertaining to prior criminal history, except for information obtained from said suspected assailant through the course of privileged communication.

G. Any and all information contained in the records of any and all suspected assailants pertaining to the investigation of the incident which is the subject of this litigation, except for information obtained from said suspected assailants through the course of privileged communication.

H. Any and all information pertaining to other patients, or anyone else, who has either been identified as a suspected participant in the assault in this case or who was known to be on the ward where this incident occurred at the time of the incident and to have a history of known assaultive behavior and/or other similar misconduct, said information not to include the names of those persons who are not suspected assailants in this case, and except for information obtained from said suspected assailants through the course of privileged communication.

I. Any and all information pertaining to prior assaults on or by patients at Defendant HOSPITAL between the years 1980 and 1985, inclusive;

J. Any and all hospital procedures regarding the intake, classification, screening, housing, separation, supervision, monitoring, observation, and discharge of patients who were known to have had criminal and/or assaultive histories.

The order also provided that, if defendant claimed information was privileged, an in camera hearing would be held prior to disclosure to determine whether a privilege applied.

Defendant hospital in this appeal complains that the discovery order reaches information acquired by defendant's physicians or psychiatrists in their professional capacity which was necessary to the diagnosis and treatment of patients and which, therefore, was privileged and not subject to discovery. Defendant argues that this order violates both the patients' rights to confidentiality and defendant's duty to maintain confidentiality.

The physician-patient privilege prevents the discovery of "information which he [a physician] may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician." MCL 600.2157; MSA 27A.2157. The psychiatrist-patient privilege prevents the discovery of "a communication made to a psychiatrist or psychologist in connection with the examination, diagnosis, or treatment of a patient, or to other persons while they are participating in the examination, diagnosis or treatment." MCL 330.1750(1)(c); MSA 14.800(750)(1)(c).

The question becomes whether the information plaintiff seeks is information gained by a physician or psychiatrist in a professional capacity and whether or not that information is necessary for purposes of examination, diagnosis and treatment. In this light, it is apparent that the information requested in paragraphs I and J of the order are clearly not privileged. Likewise, the information ordered disclosed pursuant to paragraphs A through C does not require the disclosure of information necessary for treatment or diagnosis.

Paragraph H is essentially redundant, asking for

the same information as paragraphs D through G. However, it is these four paragraphs that cause problems, since they request information from patient records and histories. These types of information may be privileged, since they may be necessary for treatment and diagnosis. However, the discovery order anticipated potential problems with privileged information and provided for in camera inspection where defendant asserts a privilege. This safeguard effectively ensures defendant's ability to assert the privilege defense to disclosure and also assures plaintiff's right to have the trial court rule on assertions of privilege by defendant.

Nevertheless, defendant claims that the in camera inspection provided in the order is of no help since even disclosure to the trial court would violate the privilege. This claim is without merit. An in camera proceeding is the appropriate vehicle to determine whether any of the information requested is protected by a statutory privilege. *Monty v Warren Hospital Corp,* 422 Mich 138, 146; 366 NW2d 198 (1985).

Defendant also claims that other statutes require that the information sought by plaintiff may not be disclosed. Defendant relies on MCL 333.20201(2)(b); MSA 14.15(20201)(2)(b) and MCL 750.410(2); MSA 28.642(2). Defendant's reliance on these statutory provisions is misplaced. MCL 333.20201(2)(b); MSA 14.15(20201)(2)(b) prohibits a third party's receipt of a patient's medical records; however, here the order appealed from did not order disclosure of any patient's medical record. MCL 750.410(2); MSA 28.642(2) prohibits the release of the name of the patient or any information concerning the treatment of a patient "for . . . consideration" and is therefore inapplicable to the facts presented here.

As the order stands, since it excepts privileged

information from disclosure and since it provides for an in camera hearing over contested information regarding whether or not it is privileged, we find that the order of the trial court sufficiently protects privileged information from disclosure while at the same time ensuring plaintiff liberal discovery. We think the order diffuses the concerns expressed in the dissent. We don't know where the disclosure will lead, perhaps nowhere, but the trial judge can amply protect privileged information in the in camera proceeding. We therefore affirm the trial court's order.

Defendant also requests this Court to rule on whether information contained in hospital incident reports are made privileged by the peer review privilege. MCL 333.20175; MSA 14.15(20175) and MCL 333.21515; MSA 14.15(21515). However, the trial court specifically declined to include such information in the order appealed from here. In fact at the hearing on January 30, 1987, the trial judge stated that he could not evaluate "the discoverability of the documents until I know whether they were generated as a result of a peer review committee such as contemplated in the statute and whether or not they are dealing with current patient care or whether they are investigation of past activities". The question is premature. The trial court contemplated further in camera proceedings. It had not reached a decision on this issue.

Since the trial court declined to rule on this issue, there is nothing for us to review at this time.

Affirmed.

P. D. SCHAEFER, J., concurred.

MACKENZIE, J. *(dissenting)*. I dissent. In my

view, in upholding the instant discovery order the majority opinion totally disregards the mandates of MCL 330.1750; MSA 14.800(750), governing the patient-psychiatrist privilege, and applies too narrowly the requirements of MCL 600.2157; MSA 27A.2157, pertaining to the physician-patient privilege.

MCL 330.1750(1)(c); MSA 14.800(750)(1)(c) defines a privileged communication as "a communication made to a psychiatrist or psychologist in connection with the examination, diagnosis, or treatment of a patient." This definition does *not* require that the information imparted by the communication be "necessary" to treatment. Moreover, under MCL 330.1750(4); MSA 14.800(750)(4), even the fact of psychiatric or psychological consultation is generally not subject to disclosure:

> In a proceeding in which subsections (2) and (3) prohibit disclosure of a communication made to a psychiatrist or psychologist in connection with the examination, diagnosis, or treatment of a patient, the fact that the patient has been examined or treated or undergone a diagnosis also shall not be disclosed unless the privileged communication is relevant to a determination by a health care insurer or health care corporation of its rights and liabilities under a policy, contract, or certificate of insurance or health care benefits.

Moreover, MCL 600.2157; MSA 27A.2157, pertaining to the physician-patient privilege, has been construed as prohibiting a physician from disclosing in the course of any action even the names of uninvolved patients where, as here, the patient or patients are not involved and do not consent. See, e.g., *Schechet v Kesten,* 372 Mich 346; 126 NW2d 718 (1964), and *Gaertner v Michigan,* 385 Mich 49; 187 NW2d 429 (1971). In other words, despite its

apparent language, the statute has not been construed as limited to information solely necessary for treatment. The Michigan cases relied upon by plaintiff for the proposition that the privilege only covers those matters in connection with medical treatment are either unhelpful or distinguishable because either insufficient facts are presented in the cases to make them applicable here, the patient involved was a party to the suit and produced medical testimony which would constitute a waiver, or the circumstances described involved situations where there was no doubt medical treatment was sought. Such is not the situation here. Finally, in light of *Schechet* and *Gaertner, supra,* the Pennsylvania and New York cases cited by plaintiff do not control here.

It cannot be denied that this state has a strong historical commitment to far-reaching, open, and effective discovery. In my view, however, the conclusion that the statutory privileges embrace more than information necessary for medical treatment does not directly contradict the policy of liberal discovery in this state. Even pursuant to MCR 2.302(B)(1), discovery does not include privileged matters. The concept of privilege thus supersedes even the liberal discovery principles of this state. In keeping with this mandate, I would reverse the order of the trial court.