736 A.2d 1168

**SHADY GROVE PSYCHIATRIC GROUP**

v.

**STATE of Maryland.**

**No. 1688, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Sept. 8, 1999.

Steven B. Gould (Brown & Gould, LLP, on the brief), Bethesda, for appellant.

Gary E. Bair, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellee.

Argued before SALMON, KENNEY and BYRNES, JJ.

KENNEY, Judge.

Appellant, the Shady Grove Psychiatric Group ("Shady Grove"), appeals the order of the Circuit Court for Montgomery County, enforcing a subpoena issued by appellee, the State of Maryland (the "State"). Shady Grove raises two questions on appeal, which we have rephrased and consolidated into one:

Did the circuit court err by enforcing the subpoena?

We shall answer in the affirmative and, therefore, reverse the judgment of the circuit court.

## FACTS

Shady Grove is a mental health professional group consisting of one psychiatrist, three psychologists, and one psychiatric social worker that provides treatment to patients for "a wide range of mental illnesses and disorders." On June 8, 1998, the State, in its investigation of an unidentified "hate crime" that apparently occurred in the vicinity of Shady

Grove's office, issued a subpoena to Shady Grove's custodian of records. The subpoena stated, in relevant part, "Please provide a list of patients who had appointments on 6/01/98 between 10:00 a.m. and 12:00 noon. Need addresses, dates of birth, phone numbers, and appointment history from February 1 to the present." Shady Grove refused to provide the information requested on the ground that it was shielded from disclosure under Md.Code (1982, 1994 Repl.Vol., 1998 Cum. Supp.), §§ 4–301 through 309 of the Health–General Article ("H.G.")(the "Confidentiality of Records Act") (the "Act") and the privilege protecting communications between a patient and psychiatrist set forth in Md.Code (1974, 1998 Repl.Vol.), § 9–109 of the Courts and Judicial Proceedings Article ("C.J.")(the "patient-psychiatrist privilege").

On August 28, 1998, the State filed a "Motion for Appropriate Relief," seeking enforcement of the subpoena. The matter was heard on September 22, 1998, and the circuit court ordered Shady Grove to produce the information requested. The court stated:

> The court is going to order the doctor to comply with the subpoena that was issued pursuant to [Article 10, § 39A] of the Courts and Judicial Proceedings Article covering the privilege because I conclude that the privilege here is not violated; that the information requested is very limited in nature and deals not with the treatment, diagnosis, prognosis of any of the patients.

The court stayed enforcement of the subpoena so that Shady Grove could note this appeal.

## DISCUSSION

Maryland Code (1957, 1998 Repl.Vol.), Art. 10, § 39A provides, in relevant part:

> (a) *Power to issue.--For the limited purpose of obtaining documents* to further an ongoing criminal investigation, the State's Attorney may issue, within the county served by the State's Attorney, a subpoena to a person to require the

production of *telephone, business, governmental, or corporate records or documents.*

. . . .

(f) *Effect on recognized privilege or right.*—Nothing contained in this section is intended to allow the contravention, denial, or abrogation of any privilege or right recognized by law. [Emphasis supplied.]

Clearly, the statutory authority of Art. 10, § 39A is expressly limited by any privilege or right recognized by law. Shady Grove suggests that in this instance the State's subpoena power is limited by the rights recognized by the Act or the patient-psychiatrist privilege. We shall examine both.

Interestingly, the State's subpoena does not request Shady Grove to produce an existing telephone, business, governmental, or corporate record or document. Rather, the terms of the subpoena require Shady Grove to generate a document by the compilation of information presumably contained in Shady Grove's records, regardless of how those records are classified. Whether such a demand is authorized by Art. 10, § 39A, is not before us, however, as appellant did not properly raise the issue in either its initial brief or its reply brief. Md. Rule 8–504; *See Beck v. Mangels,* 100 Md.App. 144, 640 A.2d 236, *cert. granted,* 336 Md. 405, 648 A.2d 991 (1994), *cert. dismissed as improvidently granted,* 337 Md. 580, 655 A.2d 370 (1995)(noting that the provisions of Rule 8–504 are mandatory and that it is necessary for an appellant to present and argue all points of an appeal in the initial brief); *Federal Land Bank of Baltimore, Inc. v. Esham,* 43 Md.App. 446, 406 A.2d 928 (1979).

## I.

## CONFIDENTIALITY OF RECORDS ACT

The Act was adopted by the General Assembly in 1990. In *Warner v. Lerner,* 115 Md.App. 428, 693 A.2d 394 (1997), *rev'd,*

348 Md. 733, 705 A.2d 1169 (1998), this Court recognized that the purpose of the Act was

> to provide for the confidentiality of medical records, to establish clear and certain rules for the disclosure of medical records, and generally to bolster the privacy rights of patients. The legislature recognized that, because of the personal and sensitive nature of one's medical records, a patient might experience emotional and financial harm if his medical records are improperly used or disclosed. It was further desired that the Act would enable health care providers to retain the full trust and confidence of their patients.

*Id.* at 431–32, 693 A.2d 394.

As defined in the Act, a "medical record" is any oral, written, or other transmission in any form or medium of information that (1) is entered in the record of a patient or recipient, (2) identifies or can readily be associated with the identity of a patient or recipient, and (3) relates to the health care of the patient or recipient. H.G. § 4–301(g)(1). A "health care provider" includes the person who renders health care to a "patient" or "recipient" and includes a facility where health care is provided. H.G. § 4–301(f)and (h). A "patient" is a person who receives health care and on whom a medical record is maintained. H.G. § 4–301(j). A "recipient" is a person who has applied for, for whom an application has been submitted, or who has received mental health services. H.G. § 4–301(m).

Pursuant to the Act, "a health care provider shall (1) keep the medical record of a patient confidential, and (2) disclose the medical record only as otherwise provided by law." H.G. § 4–302(a); *Warner v. Lerner,* 348 Md. 733, 738, 705 A.2d 1169 (1998). "Disclose or disclosure" is defined as "the transmission or communication of information in a medical record, *including an acknowledgment that a medical record on a particular patient or recipient exists.*" H.G. § 4–301(c)(emphasis added). When these provisions are synthesized, the result is as follows: As a health care provider, Shady Grove

shall transmit or communicate information in a medical record, including an acknowledgment that a medical record on a particular patient or recipient exists, only as provided by the Act or as otherwise provided by law. A health care provider that knowingly discloses a medical record in violation of the Act is liable for actual damages. H.G. § 4–309.

■ In this case, the scope of the subpoena was limited to the production of information related only to Shady Grove's patients. By definition a "patient" is a person on whom a medical record is maintained. Although the specific information sought by the State may not relate directly to "health care" as would treatment, diagnosis, or prognosis, and thus, not fall within the Act's definition of "medical record," it is illogical to believe that a patient's name, address, date of birth, phone number, and appointment history could be released by Shady Grove without acknowledging that a medical record on that particular patient exists. Thus, pursuant to the wording of the subpoena, compliance with the State's request must be governed by the provisions of the Act because Shady Grove was required to acknowledge the existence of a medical record.

■ As noted, all mental health records are made confidential under H.G. §§ 4–301 through 309. *Reynolds v. State,* 98 Md.App. 348, 365, 633 A.2d 455 (1993); *Dr. K. v. State Bd. Of Physician Quality Assur.,* 98 Md.App. 103, 116, 632 A.2d 453 (1993), *cert. denied,* 334 Md. 18, 637 A.2d 1191, *cert. denied,* 513 U.S. 817, 115 S.Ct. 75, 130 L.Ed.2d 29 (1994). Section 4–303 "requires a health care provider to disclose a medical record on the authorization of a person in interest, subject to the conditions stated in that section." [1] *Warner,* 348 Md. at 738, 705 A.2d 1169.

---

1. Under H.G. § 4–301 a "person in interest" means:
   (1) An adult on whom a health care provider maintains a medical record;
   (2) A person authorized to consent to health care for an adult consistent with the authority granted.
   (3) A duly appointed personal representative of a deceased person;

In *Warner v. Lerner, supra*, the Court of Appeals considered the proper construction of certain provisions of the Act. Warner was treated by Dr. Schirmer, a urologist, and, in the course of that treatment, disclosed personal information to Dr. Schirmer with the understanding that the information was confidential. Although it was not explained under what circumstances, the medical records concerning Warner and his treatment by Dr. Schirmer became part of the medical records of Union Memorial Hospital.

Lerner was a urologist having privileges at Union Memorial Hospital. In 1993, Leo Kelly, a patient of both Lerner and Schirmer, sued Lerner for malpractice. Kelly retained Dr. Schirmer as an expert witness and called him to testify in the case. Lerner obtained Warner's medical records from Union Memorial Hospital with the intent of using those records in his cross-examination of Dr. Schirmer. Warner alleged that Lerner had violated his rights under the Act by obtaining his medical records in a manner and for a purpose not allowed by the Act. Lerner countered that disclosure was authorized under the Act.

The circuit court concluded that disclosure was authorized under H.G. § 4–305(b)(1)(iii), permitting a health care provider to disclose a medical record without the authorization of a person in interest "to any provider's insurer of legal counsel

---

(4)(i) A minor, if the medical record concerns treatment to which the minor has the right to consent and has consented under Title 20, Subtitle 1 of this article; or

(ii) A parent, guardian, custodian, or a representative of the minor designated by a court, in the discretion of the attending physician who provided the treatment tot he minor, as provided in § 20–102 or § 20–104 of this article;

(5) If paragraph (4) of this subsection does not apply to a minor:

(i) A parent of the minor, except if the parent's authority to consent to health care for the minor has been specifically limited by a court order or a valid separation agreement entered into by the parents of the minor; or

(ii) A person authorized to consent to health care for the minor consistent with the authority granted; or

(6) An attorney appointed in writing by a person listed in paragraph (1), (2), (3), (4), or (5) of this subsection.

... for the sole purpose of handling a potential or actual claim against the provider." This Court, although expressing serious reservations, affirmed the circuit court's determination. The Court of Appeals reversed on the ground that the health care provider in question was Union Memorial Hospital and not Lerner, and thus, only Union Memorial Hospital had discretion to authorize the disclosure of Warner's medical records. *Id.* at 740–41, 705 A.2d 1169. The analysis applied in *Warner* is instructive because it affirms the principle that the disclosure of medical records must be consistent with the provisions of the Act.

Section 4–305 describes generally the situations in which a health care provider "may" disclose a medical record without the authorization of a person in interest. "Compulsory process," as defined in H.G. § 4–306(a), "includes a subpoena, summons, warrant, or court order that appears on its face to have been issued on lawful authority." Section 4–306 requires a health care provider to disclose a medical record or acknowledge the existence of a medical record, without authorization of a person in interest, in eight enumerated circumstances, only one of which appears relevant here. Section 4–306(b)(7) provides that a health care provider shall disclose a medical record without the authorization of a person in interest to

> grand juries, prosecution agencies, law enforcement agencies or their agents or employees to further an investigation or prosecution, pursuant to a subpoena, warrant, or court order for the sole purposes of investigating and prosecuting criminal activity, provided that the prosecution agencies and law enforcement agencies have written procedures to protect the confidentiality of the records.

This case, however, is not governed exclusively by § 4–306(b)(7) because the State's subpoena implicated the disclosure of mental health records, which is governed also by § 4–307. Thus, we must determine what impact, if any, that provision has on the request for disclosure.

Section 4–307(b)(7) provides, in relevant part:

(b) The disclosure of a medical record developed in connection with the provision of mental health services shall be governed by the provisions of this section in addition to the other provisions of this subtitle.

(c) When a medical record developed in connection with the provision of mental health services is disclosed without the authorization of a person in interest, only the information in the record relevant to the purpose for which disclosure is sought may be released.

. . . .

(h) (1) A health care provider shall disclose a medical record without the authorization of a person in interest:

. . . .

(v) in accordance with service of compulsory process or a discovery request, as permitted under § 9–109(d), § 9–109.1(d), or § 9–121(d) of the Courts and Judicial Proceedings Article,[2] or as otherwise provided by law, to a court, an administrative tribunal, or a party to a civil court, administrative, or health claims arbitration proceeding, if:

1.   The request for issuance of compulsory process or the request for discovery filed with the court or administrative tribunal and served on the health care provider is accompanied by a copy of a certificate directed to the recipient, the person in interest, or counsel for the recipient or the person in interest;  and

2.   The certificate:

A.   Notifies the recipient or the person in interest that disclosure of the recipient's medical record is sought;

B.   Notifies the recipient or the person in interest of the provisions of this subsection or any other provision

---

**2.**  These provisions relate respectively to the psychiatrist or psychologist, psychiatric-mental health nursing specialist, and licensed social worker privilege.

of law on which the requesting party relies in seeking disclosure of the information;

C.   Notifies the recipient or the person in interest of the procedure for filing a motion to quash or a motion for a protective order;

D.   is attached to a copy of the request for issuance of a compulsory process or request for discovery;  and

E.   is mailed to the recipient, the person in interest, or counsel for the recipient or person in interest by certified mail, return receipt requested, on or before the date of filing the request for issuance of compulsory process or the request for discovery;

(vi) in accordance with a subpoena for medical records on *specific recipients:*

1.   To health professional licensing and disciplinary boards for the sole purpose of an investigation regarding licensure, certification, or discipline of a health professional or the improper practice of a health profession;  and

2.   To grand juries, prosecution agencies, and law enforcement agencies under the supervision of prosecution agencies for the sole purposes of investigation and prosecution of *a provider* for theft and fraud, related offenses, obstruction of justice, perjury, unlawful distribution of controlled substances, and of any criminal assault, neglect, patient abuse or sexual offense committed by *the provider* against a recipient, provided that the prosecution or law enforcement agency shall:

A.   have written procedures which shall be developed in consultation with the director to maintain the medical records in a secure manner so as to protect the confidentiality of the records;  and

B.   in a criminal proceeding against *a provider*, to the maximum extent possible, remove and protect recipient identifying information from the medical records used in the proceeding.

■ Obviously, any disclosure in this case was in response to compulsory process. H.G. § 4–307(h)(v) addresses disclosure of mental health records without the authorization of a person in interest in accordance with service of compulsory process, but applies only to those situations where the disclosure is made "to a court, an administrative tribunal, or a party to a civil court, administrative, or health claims arbitration hearing." As the information requested in this case was to be disclosed to the State for criminal investigation purposes, this subsection is not relevant. Similarly, subsection (h)(vi), which requires a health care provider to disclose mental health records in accordance with a subpoena issued pursuant to an investigation by law enforcement agencies, is not relevant in this case because it applies only when the subject of the investigation is a health care provider, as opposed to a recipient. The only provision of H.G. § 4–307 seemingly applicable is subsection (c), which mandates that when a "medical record developed in connection with mental health services is disclosed without the authorization of a person in interest, only the information in the record relevant to the purpose for which disclosure is sought may be released." We conclude that the information requested by the subpoena is sufficiently circumscribed to satisfy that limitation.

It is undisputed that the subpoena in this case was issued pursuant to an investigation of criminal activity. H.G. § 4–306(b)(7) requires a health care provider to disclose medical records in such instances, provided that the State proves that it has "written procedures to protect the confidentiality of the records." Unlike subsections (b)(2) and (b)(6), subsection (b)(7) is not specifically subject to the additional limitations set forth in H.G. § 4–307.

## II.

### The Patient–Psychiatrist Privilege

Courts and Judicial Proceedings § 9–109 provides in pertinent part:

(b)Unless otherwise provided, in all judicial, legislative, or administrative proceedings, a patient or his authorized representative has a privilege to refuse to disclose, and to prevent a witness from disclosing, communications relating to diagnosis or treatment of the patient's mental or emotional disorder.

(c) If a patient is incompetent to assert or waive this privilege, a guardian shall be appointed and shall act for the patient.  A previously appointed guardian has the same authority.

Shady Grove emphasizes that the identity and appointment history of a patient is directly related to the treatment of the patient's disorder and that all the information relating to a patient's identity is communicated to the mental health provider in the context of mental health treatment.  Thus, Shady Grove argues that the information requested by the State is covered by the privilege.

Noting that Maryland courts have not addressed the issue, Shady Grove asks us to adopt the reasoning applied by the Supreme Court of South Dakota in *Weisbeck v. Hess*, 524 N.W.2d 363 (S.D.1994).  In that case, the plaintiff, Weisbeck, filed a professional negligence action against a psychologist. During the course of discovery, the trial court ordered a psychologist to provide a list of patients that he had treated over the previous seven years.  The psychologist appealed, arguing that the information was privileged under a statute providing that "[a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition[.]"

After analyzing the unique nature of the relationship between the patient and the psychotherapist, the court commented:

"A physical ailment may be treated by a doctor who the patient does not trust, but if a psychologist or psychiatrist does not have the patient's trust, the therapist cannot treat the patient."  When an individual makes the courageous

choice to seek help, confidentiality begins. This Court should not discourage such courage. The privilege covers that information "which is necessary and proper to enable him to perform his duty or act in his professional capacity[.]" It may extend to include those communications made by a patient which tends to blacken her character. Thus, the privilege should cover any form of communication made as a part of the therapeutic relationship. Hence, therapy mandates name confidentiality.

*Id.* at 365–66 (citations omitted).

The court, recognizing that a patient's interest in privacy must always be balanced against the judicial system's goal of ascertaining the truth, concluded that the appropriate application of the privilege should be resolved on a case by case basis. Under the circumstances presented in that case, the court held that information sought by Weisbeck was covered by the privilege. The court stated:

With the "case by case basis" in mind, we consider the anonymous patients whose identities are at risk herein. For example, a woman who may have been the victim of sexual abuse as a child may not confront the problem for years but may wish to eventually do so with the utmost privacy. By practical reason, one may assume the potential damage to this woman should one day a stranger come to her door to interrogate her about possible sexual liaisons between her and her mental health counselor. Other less intrusive means, by skillful counsel, may be employed, to learn if Hess is taking full advantage of his female patients' vulnerability. Concerning such privacy in this case, the psychotherapist should not be compelled to reveal his patients' names.

*Id.* at 366.

Relying primarily on the reasoning applied in *Porter v. Michigan Osteopathic Hosp. Ass'n,* 170 Mich.App. 619, 428 N.W.2d 719 (1988), *overruled by Dorris v. Detroit Osteopathic Hospital Corp.,* 460 Mich. 26, 594 N.W.2d 455 (1999), and *County of Alameda v. Superior Court,* 194 Cal.App.3d 254,

239 Cal.Rptr. 400 (1987), the State asks us to affirm the trial court. In *Porter*, a patient of a hospital alleged that she was raped by two other patients of the hospital. The victim's guardian brought a negligence action against the hospital and sought information from the hospital concerning the alleged rapists. The trial court ordered the hospital to disclose, *inter alia*, the names, addresses, room assignment, date of admission, and date of discharge of all suspected assailants.

The hospital appealed, arguing that the information requested related to the diagnosis and treatment of its patients and was, therefore, privileged under a statute that precluded discovery of "a communication made to a psychiatrist or psychologist in connection with the examination, diagnosis, or treatment of a patient, or to other persons while they are participating in the examination, diagnosis or treatment." The Court of Appeals of Michigan disagreed, concluding that the name, address, room assignment, date of admission, and date of discharge did not "require the disclosure of information necessary for treatment and diagnosis." *Id.* at 624, 428 N.W.2d 719.[3]

In *County of Alameda v. Superior Court*, a patient of a psychiatric hospital sued the hospital, claiming that she was raped by another patient in one of the hospital's bathrooms. The trial court ordered the hospital to produce information requested by the plaintiff, including the "name, address, and telephone number of the man found in the bathroom with [her] at the time of the incident." The hospital appealed, arguing that the information was privileged under a statute providing, in relevant part, that "the patient, whether or not a party, has

---

**3.** The State recognizes that under current Michigan law, the names of such patients would not be discoverable because the legislature of that state amended the psychiatrist-patient privilege by including an express identity privilege. In addition, in a case decided approximately one week prior to oral argument in this case, the Supreme Court of Michigan, in a case related to the physician-patient privilege, seemingly overruled the *Porter* reasoning by recognizing that the identity of a patient was "necessary" to enable a physician "to prescribe" for a patient and protected by the physician-patient privilege. *Dorris*, 594 N.W.2d at 462.

a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist...."

The Court of Appeals of California affirmed the trial court's order. Recognizing that prior California case law had established patient identity as a "confidential communication," the court determined that the victim's interest in obtaining information superseded the privacy interests asserted by the hospital. The court characterized the need for disclosure as "extraordinary," because otherwise, the rape victim would have effectively "been deprived of her day in court." *Id.* at 261, 239 Cal.Rptr. 400.

We believe *Porter* and *County of Alameda* support two separate propositions. *Porter* supports the proposition that patient identity is not a confidential communication relating to the diagnosis and treatment of a patient and, therefore, must be disclosed on request. *County of Alameda*, like *Weisbeck*, stands for the proposition that the propriety of disclosing information related to patient identity depends on the circumstances of the case and an assessment of the dynamic between competing policy interests.

■ The trial court in this case considered only whether the information sought by the State, i.e., the name, address, phone number, and appointment history of a patient, related to the treatment and diagnosis of a patient. The court concluded the information did not relate to the treatment and diagnosis of the patient and therefore was not privileged communication under C.J. § 9–109. This is consistent with our decision in *Reynolds v. State. Reynolds*, 98 Md.App. at 368, 633 A.2d 455 ("Privilege statutes must be narrowly construed."); *See also E.I. du Pont de Nemours & Co. v. Forma–Pack, Inc.*, 351 Md. 396, 406, 718 A.2d 1129 (1998)("The attorney-client privilege as applied in judicial proceedings is narrowly construed."); *Sears, Roebuck & Co. v. Gussin*, 350 Md. 552, 714 A.2d 188 (1998)(applying strict construction to accountant-client privilege).

■ Courts and Judicial Proceedings § 9–109 protects from disclosure only those communications related to the "diagnosis or treatment of the patient's mental or emotional disorder." There is a statutorily recognized difference in scope between a privileged communication and the confidentiality of a medical record. The Act makes the medical record and even the acknowledgment of a medical record confidential. In addition, there is a constitutional right to privacy in such records, but that right is not absolute. *Dr. K.,* 98 Md.App. at 114, 632 A.2d 453. The right must be balanced against legitimate state interests. *Id.*

The information sought by the State divulges the identity of Shady Grove's patients and their appointment history. It does not relate to diagnosis and treatment of a mental or emotional disorder in the ordinary meaning of those terms and, therefore, is not protected by the patient-psychiatrist privilege. Had the General Assembly wished to protect a patient's identity in the legislative grant of privileged communication in the patient-psychiatrist relationship, as it did in the Act, it could have done so. It is not that we are unsympathetic to the arguments in *Weisbeck* regarding name confidentiality in the treatment of mental health patients, but we believe that any expansion of that privilege should be made by the legislature and not by this Court.

■ In sum, the trial court erred when it ordered Shady Grove to comply with the subpoena. Although the information requested in the subpoena did not relate to the health care of the patient, the wording of the subpoena was such that the information could not be disclosed without acknowledging that a medical record on a particular recipient existed. Health–General § 4–306(b)(7) requires a health care provider to disclose a medical record to a prosecution agency pursuant to a subpoena issued in a criminal investigation, but only if the prosecution agency first proves that it has written procedures to protect the confidentiality of that record. The record does not reflect any proof of such procedures, and, thus, the subpoena should not have been enforced.

JUDGMENT REVERSED. COSTS TO BE PAID BY APPELLEE.